IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VANESSA SIZER,

    *Plaintiff*,

v.

                            Civil Action No. ELH-19-569

BAYO OSHINNAIYE, *et al.*,

    *Defendants*.

**MEMORANDUM OPINION**

Self-represented plaintiff Vanessa Sizer filed suit on February 22, 2019, against defendants Bayo Oshinnaiye, Bertha Okere-Ford, Michele Michael, and Freedom Mortgage Corporation ("Freedom Mortgage"). ECF 1 (the "Complaint"). The suit concerns an alleged "fraudulent mortgage contract" with respect to her home in Hanover, Maryland. *Id.* at 7. Although the Complaint is largely unintelligible, plaintiff appears to allege intentional infliction of emotional distress, deficient disclosures, and violations of "the Consumer Protection Act," the "uniform commercial Code CFR 42. 1001.1101," "RICO Law 1341," and the 14th Amendment to the United States Constitution. ECF 1; *see also* ECF 1-8. Sizer also seeks to quiet title to her property. ECF 1 at 8. Plaintiff appended numerous exhibits to her suit, in excess of 250 pages. ECF 1-1 to ECF 1-9.

Subject matter jurisdiction appears to be predicated on diversity of citizenship. ECF 1 at 4. But, as noted, Sizer also asserts a constitutional claim and violations of several federal laws. *Id.* at 7; ECF 1-8 at 1.

Two of the three individual defendants responded to the suit. *See* ECF 17; ECF 18. They are self-represented.

Freedom Mortgage has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF 15. The motion is supported by a memorandum (ECF 15-1) (collectively, the "Motion") and several exhibits. ECF 15-3 to ECF 15-7. Plaintiff opposes the Motion. ECF 16; ECF 19 (collectively, the "Opposition"). Ms. Sizer also filed a submission docketed at ECF 30. Freedom Mortgage did not reply, and the time to do so has expired. *See* Docket.

The Court is mindful that plaintiff is self represented. Therefore, her submissions shall be liberally construed. *Erickson v. Pardu*s, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)); *see White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nonetheless, liberal construction does not mean that a court can ignore a clear failure in the pleadings to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented.").

Indeed, "'even *pro se* litigants [must] state their claims in a[n] understandable and efficient manner.'" *Plumhoff v. Central Mortgage Co.*, 286 F. Supp. 3d, 699, 702 (D. Md. 2017) (alterations in *Plumhoff*) (quoting *Stone v. Warfield*, 184 F.R.D. 553, 555 (D. Md. 1999)). A district court "is not obliged to ferret through a Complaint, searching for viable claims." *Wynn–Bey v. Talley*, RWT–12–3121, 2012 WL 5986967, at *2 (D. Md. Nov. 28, 2012). Therefore, a court "may dismiss a complaint that is 'so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id.* (quoting *Salhuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988)).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow. I shall grant the Motion. However, in view of plaintiff's pro se status, I shall afford her an opportunity to amend.

# I.     Factual Background[1]

In November 2013 Sizer and Chicquette H. Myers executed the mortgage in issue for their home, located on Fairbanks Drive in Hanover.  ECF 1 at 7; ECF 1-1 at 2-4.  Plaintiff alleges that "all parties involved" acted "intentionally" to defraud her.  *Id.*  According to Sizer, the "Real Estate Broker," Oshinnaiye, "failed to disclose detailed information concerning Ms. Sizer's mortgage contract . . ." and "certain pages of the contract [were] not signed/notarized by all parties involved in this contract."  *Id.*  Claiming that all of the documents were not recorded together, Sizer alleges that the mortgage is "null and void."  *Id.*  She also complains that her "fraudulent contract" was sold to Freedom Mortgage, but she was not "told about the pooling and servicing agreement" or her rights under several federal statutes.  *Id.*  In addition, Sizer asserts that "the contract wasn't recorded right away until a few weeks later in April 2014. . ."  *Id.*  And, she states: "In 1933, the federal united sates [sic] hypothecated ALL of present and FUTURE PROPERTIES, assets and labor of their SUBJECTS 'the 14th amendment U.S. citizen to the Federal Reserve System."  *Id.* at 8.

In the Complaint, Sizer identifies herself as a citizen of Maryland.  ECF 1 at 4.  She does not provide the citizenship of any of the defendants.  But, according to plaintiff, all three individual defendants reside in Maryland.

Both plaintiff and Freedom Mortgage submitted a copy of the fee simple deed to the property in question, executed November 14, 2013.  ECF 1-1 at 2-4; ECF 15-3.  It is in the name

---

[1] The factual summary is drawn primarily from the Complaint.  In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  Moreover, as discussed, *infra*, I may consider certain exhibits submitted by the parties, without converting the Motion to one for summary judgment.

of Myers and Sizer, as tenants by the entirety. *Id.* The deed was signed by the grantors and a notary public. *Id.* at 2. Freedom Mortgage also submitted a copy of the promissory note executed by Sizer and Myers on November 20, 2013, in favor of Freedom Mortgage as lender, in the amount of $338,751.00, with interest at 4% per annum. ECF 15-4. In addition, Freedom Mortgage submitted the Deed of Trust, recorded in Anne Arundel County, Maryland, reflecting that Sizer and Myers borrowed the principal sum of $338,751.00 from Freedom Mortgage to fund the purchase of the property. ECF 15-5. It was signed by Sizer and Myers on November 20, 2013. *Id.* at 7-8.

Further, Freedom Mortgage submitted a second promissory note signed by Sizer and Myers, dated May 6, 2016. ECF 15-6. It reflects a reduced principal loan balance owed to Freedom Mortgage, in the sum of $328,824.00, as well as a reduced yearly interest rate of 3.25%. And, a corresponding Deed of Trust, signed by the borrowers, was recorded. ECF 15-7.

In her Opposition, Sizer launches a bevy of claims based on the statute of frauds and the Uniform Commercial Code. ECF 19, ¶¶ 4, 5, 10. She also reiterates her RICO claim. *Id.* ¶ 9.

Additional facts are included, *infra*.

## II.    Legal Standards

### A.  12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) raises the issue of "whether the court has the competence or authority to hear and decide the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005); *see generally Fort Bend Co. v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1848 (2019) (explaining the term "jurisdiction"). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See*

*Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans*, 166 F.3d at 647.

Here, Freedom Mortgage makes a facial challenge to subject matter jurisdiction. It argues that the facts in Sizer's Complaint are insufficient to support subject matter jurisdiction on the basis of either diversity jurisdiction or federal question jurisdiction.

### B. 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th

Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint,

the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'" Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n*

*v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As indicated, plaintiff appended several exhibits to her Complaint. In addition, Freedom Mortgage submitted several exhibits with its Motion. In particular, it attached the deed to the property (ECF 15-3); the promissory note with respect to the first mortgage (ECF 15-4); the deed of trust against the property (ECF 15-5); the promissory note with respect to the second mortgage (ECF 15-6); and the second deed of trust (ECF 15-7). These documents are integral to the Complaint. And, the publicly recorded documents are subject to judicial notice. Accordingly, I may consider these exhibits without converting the Motion to one for summary judgment.

### III. Discussion

Freedom Mortgage argues that this Court lacks subject matter jurisdiction. ECF 15-2 at 7. In particular, it contends that neither diversity jurisdiction nor federal question jurisdiction exists therefore and the Complaint must be dismissed. *Id.* at 7-10.

### A. Jurisdiction Generally

Federal courts are courts of limited jurisdiction. *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 432 (4th Cir. 2014) (quotation marks omitted) (citing *Kokkonen v. Guardian*

*Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)).  Thus, a federal district court may adjudicate a case only if it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (internal quotation marks omitted).  As the Fourth Circuit stated in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), if a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's [subject matter] jurisdiction over the matter."

Notably, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen,* 511 U.S. at 377).  Even where no party challenges subject matter jurisdiction, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).  And, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Hanna,* 750 F.3d at 432.

Congress has conferred jurisdiction on the federal courts in several ways.  To provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 1331; *see also Exxon Mobil Corp.,* 545 U.S. at 552; *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012); *see also* U.S. Constitution Art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . ."). This is sometimes called federal question jurisdiction.

In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states

against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon Mobil Corp.,* 545 U.S. at 552; *see* 28 U.S.C. § 1332. Of relevance here, diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss,* 7 U.S. 267 (1806).

Under the "well-pleaded complaint" rule, facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)). Put another way, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). This means that "a claim of federal question jurisdiction is to be resolved on the basis of the allegations of the complaint itself." *Burgess v. Charlottesville Sav. & Loan Assoc.*, 477 F.2d 40, 43 (4th Cir. 1973). Therefore, a complaint must contain allegations "'affirmatively and distinctly' establishing federal grounds[] 'not in mere form, but in substance' and 'not in mere assertion, but in essence and effect." *Id.* (citations omitted).

Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz*, 599 U.S. at 95; *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010). And, "the mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit'. . . ." *Burgess*, 477 F.2d at 43 (citations omitted).

## B. Diversity Jurisdiction

Freedom Mortgage contends that this Court lacks diversity jurisdiction. ECF 15-2 at 7-9. The citizenship of the litigants is central when diversity jurisdiction is invoked. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998). Notably, "state citizenship for diversity jurisdiction depends not on residence, but on national citizenship and domicile." *Id.* (citation omitted). Generally, "the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Id*; *see also Robertson v. Cease*, 97 U.S. 646, 648 (1878) ("Citizenship and residence, as often declared by this court, are not synonymous terms.").

In other words, for "purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Rather, a U.S. national is a citizen of the state where the person has his or her domicile, which "requires physical presence, coupled with an intent to make the State a home." *Id.*

As noted, Sizer identifies herself as a citizen of Maryland. ECF 1 at 4. Sizer has only provided the residences of the individual defendants, not their citizenship. All three are Maryland residents, according to plaintiff. *See* ECF 1 at 2-3. Therefore, according to Freedom Mortgage, she plainly "fails to allege the citizenship of the other defendants, leaving the Court to guess whether it is properly authorized to hear this case." ECF 15-2 at 8.

Both Oshinnaiye and Okere-Ford responded to the Complaint. They provided addresses that are located in Maryland. *See* ECF 17 at 1; ECF 18 at 1. Sizer responded to the Motion, but did not address Freedom Mortgage's arguments about diversity jurisdiction. ECF 19.

As noted, "the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Here, plaintiff has

not provided the citizenship of the individual defendants. But, in light of the responses of two of the individual defendants, it is reasonable to equate their residency with their domicile. Because at least two of the individual defendants appear to be domiciled in Maryland, this Court lacks diversity jurisdiction.

## C. Federal Question Jurisdiction[2]

### 1. RICO

Freedom Mortgage argues, alternatively, that Sizer's claims do not establish federal question jurisdiction under 28. U.S.C. § 1331. ECF 15-2 at 10. As Freedom Mortgage observes, Sizer "makes only a single reference to the federal RICO statute and a separate, and unrelated purported federal regulation which is insufficient to invoke federal question jurisdiction as a matter of law." *Id.* It contends that "where a complaint contains no facts or insufficient facts to state a viable claim under RICO, it presents no federal question." *Id.*

Plaintiff mentions "RICO Law 1341" in her Complaint. ECF 1 at 7. Her allegations fall woefully short of stating a RICO claim.

Congress enacted the Racketeer Influenced and Corrupt Organizations ("RICO") law as Title IX of the Organized Crime Control Act of 1970, Pub. L. No. 91–452, 84 Stat. 922 (1970). *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). *See* 18 U.S.C. §§ 1961-1968. Under 18 U.S.C. § 1962, it is unlawful, *inter alia*, for any person employed by or associated with any enterprise to conduct or participate in the "enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). But, RICO is not limited to criminal cases. In addition to criminal penalties, Congress "granted a private civil right of action to '[a]ny person

---

[2] I shall consider only whether plaintiff has stated a federal claim. At this juncture, I need not consider whether plaintiff has stated any viable supplemental state law claims, such as intentional infliction of emotional distress.

injured in his business or property by reason of a violation of" the RICO provisions." *ESAB Grp.*, 126 F.3d at 626 (citing 18 U.S.C. § 1964(c)).

A civil RICO action "'is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity.'" *U.S. Airline Pilots Ass'n v. Awappa, LLC,* 615 F.3d 312, 317 (4th Cir. 2010) (citation omitted); *see, e.g.*, *Lewis v. Maryland*, PWG-17-1636, 2018 WL 1425977, at *5 (D. Md. Mar. 22, 2018); *Bailey v. Atlantic Auto. Corp.*, 992 F. Supp. 2d 560, 578 (D. Md. 2014). But, the Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988).

To plead a civil RICO claim, the plaintiff must allege "'1) conduct [causing injury to business or property] 2) of an enterprise 3) through a pattern 4) of racketeering activity.'" *Morley v. Cohen*, 888 F.2d 1006, 1009 (4th Cir. 1989 (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)); *see Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (citing 18 U.S.C. §§ 1962, 1964); *see also Bhari Info. Tech. Sys. Private Ltd. v. Sriram*, 984 F. Supp. 2d 498, 503 (D. Md. 2013); *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 842 (D. Md. 2013); *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 472 (D. Md. 2012).

A prevailing plaintiff in a civil RICO action is entitled to treble damages, costs, and attorney's fees. *Friedler v. Cole*, CCB-04-1983, 2005 WL 465089, at *7 (D. Md. Feb. 28, 2005). The Supreme Court has characterized RICO's civil penalties as "'drastic.'" *Awappa*, 615 F.3d at 317 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233 (1989)); *see* 18 U.S.C. § 1964(c)).

Congress has directed that the statute "be liberally construed to effectuate its remedial purposes." Pub. L. 91–452, § 904(a), 84 Stat. 941, 947. But, "Congress contemplated that only a

party engaging in widespread fraud would be subject to" the "serious consequences" available under the RICO statute, such as treble damages. *Menasco, Inc., Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989). And, courts have recognized the "need to limit [RICO's] severe penalties to offenders engaged in ongoing criminal activity, rather than isolated wrongdoers." *Friedler*, 2005 WL 465089, at *7.

The Fourth Circuit has noted the "distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." *El-Shamari*, 217 F.3d at 238. It has admonished that courts must

> exercise caution "to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions . . . are not eclipsed or preempted."

*Awappa*, 615 F.3d at 317 (quoting *Menasco, Inc.*, 886 F.2d at 683) (ellipsis in *Awappa*).

In other words, RICO "is not a cause of action to be pled lightly," and "'RICO treatment is reserved for conduct whose scope and persistence pose a special threat to social well-being.'" *Biggs v. Eaglewood Mortg., LLC*, 582 F. Supp. 2d 707, 714 (D. Md. 2008), *aff'd*, 353 F. App'x 864 (4th Cir. 2009). It applies to "'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" *Menasco, Inc.*, 886 F.2d at 684 (quoting *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987)).

In order to analyze the adequacy of a RICO claim, it is important to understand RICOS's terms and concepts.

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). *See, e.g.*, *Boyle v. United States*, 556 U.S. 938, 944 (2009);

*Kimberlin v. Nat'l Bloggers Club*, GJH-13-3059, 2015 WL 1242763, at *3 (D. Md. Mar. 17, 2015).

In *Mitchell Tracey*, 935 F. Supp. 2d at 842, the court explained:

> An "enterprise" requires proof of three elements: (1) an ongoing organization; (2) associates functioning as a continuing unit; and (3) the enterprise is an entity "separate and apart from the pattern of activity in which it engages." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 477-78 (D. Md. 2009). "[A]n associated-in-fact enterprise is one type of enterprise defined in § 1961(4)." *United States v. Tillett*, 763 F.2d 628, 631 n.2 (4th Cir. 1985). To satisfy § 1962(c)'s "distinctiveness" requirement, the Plaintiffs must further allege that the RICO "enterprise" is distinct from the defendant "person" alleged to have violated RICO. *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 457 (E.D. Pa. 2010); *Toucheque v. Price Bros. Co.*, 5 F. Supp. 2d 341, 346-47 (D. Md. 1998).

Because "'an enterprise includes any union or group of individuals associated in fact,'" RICO extends to "'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle*, 556 U.S. at 944 (quoting *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981)). Moreover, a RICO enterprise "need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods." *Id.* at 948. However, "'[v]ague allegations of a RICO enterprise . . . lacking any distinct existence and structure' will not survive dismissal." *Mitchell Tracy*, 935 F. Supp. 2d at 843 (citation omitted; modifications in *Mitchell Tracy*).

"Racketeering activity" is defined in § 1961(1)(B) to include a laundry list of "indictable" acts, such as mail fraud, wire fraud, financial institution fraud, among many other crimes. Notably, "RICO is not 'aimed at the isolated offender.'" *Zepkin*, 812 F.2d at 155 (quoting *Sedima*, 473 U.S. at 496 n.14). Therefore, "[t]he pattern requirement was intended to limit RICO to those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes." *Lipin Enters. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986).

A "pattern of racketeering activity" requires "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering

activity." 18 U.S.C. § 1961(5). To prove a pattern, a plaintiff is required to show that the predicate acts "are [1] related *and* [2] that they amount to or pose a threat of *continued* criminal activity." *H.J. Inc.*, 492 U.S. at 239 (first emphasis in original; second emphasis added). Judge Chasanow has reiterated: "To allege a pattern of racketeering activity, a plaintiff must present facts making it plausible, rather than possible, that: (1) at least two predicate acts occurred within ten years of each other; (2) the predicate acts were related; and (3) the acts 'amount to or pose a threat of continued criminal activity.'" *Swarey v. Desert Capital REIT, Inc.*, DKC-11-3615, 2012 WL 4208057, at *12 (D. Md. Sept. 20, 2012) (quoting *H.J. Inc.*, 482 U.S. at 239).

Acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240 (citation omitted). And, the enterprise's actions must affect interstate commerce. *Sterling v. Ourisman Chevrolet of Bowie, Inc.* 943 F. Supp. 2d 577, 587-88 (D. Md. 2013).

As indicated, a pattern of racketeering activity involves *continued* criminal activity. *H.J. Inc.*, 492 U.S. at 239. The Fourth Circuit has adopted a "flexible" approach to the "continuity" requirement. *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1989), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Courts utilize a "case-by-case analysis, *Capital Lighting and Supply, LLC v. Wirtz*, JKB-17-3765, 2018 WL 3970469, at *6 (D. Md. Aug. 20, 2018), and consider "the 'criminal dimension and degree' of the alleged misconduct." *HMK Corp. v. Walsey*, 828 F.2d 1071, 1073 (4th Cir. 1987) (citation omitted); *see Zepkin*, 812 F.2d at 155 ("[N]o mechanical test can determine the existence of a RICO pattern."); *Brandenburg*, 859 F.2d at 1185 (noting that continuity depends on "all the facts and circumstances of the particular case—with special attention to the context in which the predicate acts occur").

"'Continuity' is both a closed – and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. The Fourth Circuit explained in *Mensaco*, 886 F.2d at 683-84:

> Continuity . . . refers to a closed period of *repeated* conduct, or to past conduct that by its nature projects into the future with a threat of *repetition*. To satisfy the continuity element, a plaintiff must show that the predicates themselves amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity. Significantly, [p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Thus, predicate acts must be part of a prolonged criminal endeavor.

(Internal quotation marks, citations, and parentheticals omitted; alteration and emphasis in original).

As to continuity, "[f]acts relevant to this inquiry include the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." *Brandenburg*, 859 F.2d at 1185.

Where a fraud claim is asserted as the predicate act for a civil RICO violation, Rule 9(b)'s particularity requirement applies. *See, e.g.*, *Lewis*, 2018 WL 1425977, at *5 (applying heightened pleading standard to claims under RICO); *Healy v. BWW Law Grp., LLC*, PWG-15-3688, 2017 WL 281997, at *6 (D. Md. Jan. 23, 2017) (same); *Kimberlin v. Hunton & Williams LLP*, GJH-15-723, 2016 WL 1270982, at *7 (D. Md. Mr. 29, 2016) (applying Fed. R. Civ. P. 9(b) to RICO claim based on mail or wire fraud), *aff'd*, 671 F. App'x 127 (4th Cir. 2016); *Bailey*, 992 F. Supp. 2d at 584 ("A plaintiff must plead circumstances of the fraudulent acts that form the alleged pattern of

racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).") (citations and quotation marks omitted); *Sriram*, 984 F. Supp. 2d at 505.

Construing plaintiff's Complaint liberally, she has wholly failed to state a RICO claim. She has not pleaded any facts concerning an enterprise or indicating a pattern of racketeering activity.

As such, on the face of Sizer's Complaint, she has not stated a RICO claim. Because plaintiff has "not alleged facts sufficient to state a claim under RICO . . .there is no federal question presented" on the basis of the statute. *Kun Lee v. PMG 1001, LLC*, RDB-09-1514, 2010 WL 148323, at *4 (D. Md. Jan. 11, 2010).

## 2. 42 CFR 1001.1101

In her suit, Sizer cites "uniform commercial Code CFR 42 1001.1101." ECF 1 at 7. Part 1001 of 42 C.F.R. pertains to "Program Integrity—Medicare and State Health Care Programs." Section § 1001.1101 of 42 C.F.R. is titled "Failure to disclose certain information." It states:

(a) Circumstance for exclusion. The OIG may exclude any entity that did not fully and accurately, or completely, make disclosures as required by section 1124, 1124A or 1126 of the Act, and by part 455, subpart B and part 420, subpart C of this title.

(b) Length of exclusion. The following factors will be considered in determining the length of an exclusion under this section—

(1) The number of instances where full and accurate, or complete, disclosure was not made;

(2) The significance of the undisclosed information;

(3) Whether the individual or entity has a documented history of criminal, civil or administrative wrongdoing (The lack of any prior record is to be considered neutral);

(4) Any other facts that bear on the nature or seriousness of the conduct; and

(5) The extent to which the entity knew that the disclosures made were not full or accurate.

This regulation cannot support a claim for mortgage fraud. Therefore, its invocation cannot support federal question jurisdiction.

### 3. Fourteenth Amendment

Sizer baldly asserts a violation of the Fourteenth Amendment. ECF 1 at 8; ECF 1-8 at 1.

The Due Process Clause of the Fourteenth Amendment provides, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. X IV, § 1. In general, in order to succeed on a due process claim, the plaintiff must show: (1) that she "has a constitutionally protected 'liberty' or 'property' interest"; and (2) that she "has been 'deprived' of that protected interest by some form of 'state action.'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).

Of import here, the Due Process Clause "'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Therefore, in a claim under the Fourteenth Amendment, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir.1999). Put another way, "private activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507 (citation omitted).

Plaintiff has not named any government defendants. Nor has she pleaded any facts to show why any of the defendants might "have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche*, 191 F.3d at 506. Therefore, she has failed to state a claim under the Fourteenth Amendment.

### 4. Federal Statues

In her Complaint, Sizer mentions the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq* ("TILA"). She elaborates in subsequent correspondence with the Court (ECF 16). But, I may only consider the allegations in the Complaint to determine if she has stated a claim under TILA. *See, e.g.*, *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (noting that "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).

TILA was passed in 1968 to "'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 364–65 (1973) (quoting 15 U.S.C. § 1601(a)). More recently, Congress passed the Helping Families Save Their Homes Act of 2009, Pub.L. No. 111–22, 123 Stat. 1632, which amended various sections of TILA.

Among other things, TILA "requires lenders 'clearly and conspicuously' to make a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit transaction." *Watkins v. SunTrust Mortg., Inc.,* 663 F.3d 232, 234 (4th Cir.2011) (quoting 15 U.S.C. §§ 1601(a)). Creditors are also required "to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *see generally* 15 U.S.C. §§ 1601-1667f.

TILA's disclosure requirements apply only to creditors and their assignees. In particular, "[t]he only parties who can be liable for [TILA] violations are the original creditor, 15 U.S.C.

§ 1640, and assignees of that creditor, 15 U.S.C. § 1641." *Chow v. Aegis Mortg. Corp.,* 286 F.Supp.2d 956, 959 (N.D. Ill. 2003).

Section 1640 of TILA authorizes a civil action for damages against "any creditor who fails to comply with any requirement imposed under" §§ 1631–1651 and 1666–1667f (*i.e.,* Parts B, D, and E of the TILA). Section 1635 "grants borrowers the right to rescind a loan 'until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by the Act], whichever is later, by notifying the creditor, in accordance with the regulations of the [Federal Reserve] Board, of his intention to do so." *Jesinoski v. Countrywide Home Loans, Inc.,* 574 U.S. 259, 135 S. Ct. 790, 793 (2015).

Although this Court must construe the Complaint liberally, it is under no obligation to "look beyond the complaint's allegations. . . ." *White,* 886 F. 2d at 721. As noted, "[f]or the purposes of establishing federal question jurisdiction," federal courts "follow the well-pleaded complaint rule and find jurisdiction "'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Pressl v. Appalachian Power Co.,* 842 F.3d 299, 302 (4th Cir. 2016) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)). "Simply listing federal statutes in the complaint does not confer federal question jurisdiction. . . ." *Swanson v. Style Source, Inc.,* 7:18-cv-63-BO, 2018 WL 4604525, at *2 (E.D.N.C. Sept. 25, 2018).

## IV. Conclusion

Subject matter jurisdiction concerns "the court's very power to hear the case." *Patterson v. State Bureau of Investigation*, 93 F. App'x 38, 39 (4th Cir. 2004). Based on the allegations, plaintiff has not asserted facts that give rise to federal question jurisdiction. Nor has she established diversity jurisdiction. However, I shall grant plaintiff leave to amend her Complaint to remedy, if possible, the defects discussed in this Memorandum Opinion.

An Amended Complaint is due by February 7, 2020.

An Order follows.

Date: January 17, 2020                              _____/s/_____

Ellen L. Hollander
United States District Judge